IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SILBAUGH, | ) | CASE NO.: 1:18 CV 161 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| CENSTAR ENERGY CORP., | ) | |
| | ) | |
| Defendant. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | <u>AND ORDER</u> |
| | ) | |

This matter is before the Court on Defendant, CenStar Energy Corp.'s Motion to Dismiss
Pursuant to Rule 12(B)(1). (ECF #20). Plaintiff filed an Opposition to the motion, and
Defendant, filed a Reply. (ECF # 22, 25). After careful consideration, the Court has determined
that Defendant's Motion to Dismiss should be DENIED.

# FACTUAL AND PROCEDURAL OVERVIEW[1]

Plaintiff's Second Amended Complaint is filed as Class Action Complaint alleging that Defendant CenStar Energy Corp. (CenStar) has violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.*, by using automatic telephone dialing systems and prerecorded/artificial voices to place unsolicited calls and leave messages on consumer's telephone voicemail without their consent. (ECF #17). The messages were inserted into Plaintiff's voicemail box using "ringless voicemail messages." The Second Amended Complaint alleges that these messages are sent using a computer-to-computer connection that is "essentially the same technology that is used for sending SMS-based telemarketing text messages."

Plaintiff claims that when these voicemails are received she is alerted by her phone by means of a tone, alarm or other means similar to what she would happen if she received a text message. She also alleges that in order to listen to the message, consumers must either use cell phone minutes to call into voicemail to retrieve the message, or download the voicemail to their cell phone to listen to the message. She further alleges that if one of these ringless voicemail messages is received while the phone is roaming, it can trigger roaming charges even if the consumer does not receive the message. According to the Second Amended Complaint, there is no way to block ringless voicemail messages from being sent or being received by a consumer's phone.

---

[1]

The facts as stated in this Memorandum and Order are taken from the Second Amended Complaint and should not be construed as findings of this Court. In a motion to dismiss, the Court is generally obligated, for the purposes of that motion, to accept as true the facts set forth by the non-moving party, in this case, the Plaintiff. To the extent that Defendant is allowed to make a factual challenge under a 12(b)(1) motion, the Court has addressed any contradictory evidence provided below.

Plaintiff claims that these unwanted voicemails invaded her privacy, used up her limited voicemail space, which she is required to pay for, caused her aggravation, and usurped her time by drawing her attention to the alerts, and causing her to check her messages for unwanted messages.

## STANDARD OF REVIEW

On a motion brought under Fed. R. Civ. P. 12(b)(1), asserting a lack of subject matter jurisdiction, this Court's inquiry is not limited to the content of the complaint. When addressing a factual challenge to the Court's subject matter jurisdiction , the Court is "not to presume that the factual allegations asserted in the Complaint are true." *Ohio Nat'l Life Ins. Co. v. Unites States*, 922 F.2d 320, 325 (6th Cir. 1990). Rather the Court may consider "affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts," and "will weigh the conflicting evidence to determine whether proper jurisdiction exists." *Busacca v. Excavating Bldg. Material & Const. Drivers Union Local 436 Welfare Fund Bd. Of Trs.*, 953 F.Supp. 867, 870-71 (N.D. Ohio 1996).

In this case, the Defendant has not presented so much of a factual challenge to the Plaintiff's case, as a legal one. Defendant claims repeatedly in its Motion to Dismiss that the Plaintiff has failed to allege a concrete and particularized injury, or put another way any "loss of money or property or other harm contemplated by the TCPA that would give rise to Article III standing." (ECF #20-1, at 5; see also ECF #20-1 at 6, 9, 10, 11). They do not so much challenge the factual veracity of many of the alleged harms, as argue that those allegations are insufficient to state a concrete and particularized injury under the TCPA. Therefore, where Defendant's challenge is to the legal sufficiency of the allegations in the Second Amended Complaint, this

Court will, as required, "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." *Jones v. City of Carlisle, Ky.*, 3 F.3d. 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). Where Defendant has, in fact, presented a factual challenge, supported by evidence, the Court will determine whether the Plaintiff's claims have sufficient factual support to sustain a motion to dismiss.

## ANALYSIS

CenStar argues that under the recently decided United States Supreme Court case *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), the claims against it in the Second Amended Complaint must be dismissed for lack of standing. *Spokeo* clarified the standing requirement of a concrete and particularized injury as it relates to statutorily created procedural requirements. At its core, *Spokeo* stands for the premise that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547-48. The *Spokeo* Court found that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation," under the Fair Credit Reporting Act ("FCRA") if they suffered no harm from the violation. The Court recognized, however, that procedural violations may give rise to a concrete and actual injury, if they cause actual harm. *Spokeo*, 136 S. Ct. At 1544.

Post-*Spokeo* some courts have acknowledged that the prohibitions in the TCPA are distinguishable from the FCRA's procedural requirements. When enacting the TCPA, Congress recognized that the interruption, intrusion, and invasion of privacy caused by unwanted

communications can rise to the level of a nuisance which is actionable under the law.[2] *See.*
*Maraan v. Dish Network, LLC, 1:13-CV-00436, 2014 WL 6603233, at \*3 (S.D. Ohio. Ov. 19,
2014). Mims v. Arrow Financial Services, LLC,* 565 U.S. 368, 384 (citing 137 Cong. Rec.
30821-30822 (1991)); H.R. Rep. 102-317, 2 (1991); S. Rep. 102-178, 1 (1991)). Some have gone
so far as to hold that "unlike FCRA violations. TCPA violation necessarily cause harm to
consumers." *Smith v. Blue Shield of California Life & Health Ins. Co.,* 228 F.Supp. 3d 1056,
1062 (C.D. Cal. 2017); *see also, LaVigne v. First Community Bancshares. Inc.,* 215 F.Supp.3d
1138, 1147 (D.N.M. 2016); *Wilkes v. CareSource Management Group Co.,* NO. 4:16-CV_038
JD, 2016 WL 7179298, \*5 (N.D. Ind. Dec. 9, 2016). The harms inherent in a TCPA violation
can include "(1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the
consumer's cell phone, and (3) wasting the consumer's time . . . ." *Mey v. Got Warranty, Inc.,*
193 F.Supp.3d 641, 645 (N.D. W. Va. June 30, 2016). In fact, most courts have found that when
a plaintiff alleges an invasion of privacy under the TCPA, Article III standing exists even in the
absence of any economic harm. *Hamza v. Dunhams Athleisure Corp.,* NO. 16-11641, 2017 WL
1077895, \*4 (E.D. Mich. Mar. 22, 2017). Courts have also found standing under the TCPA
when a Plaintiff alleges monetary losses, opportunity losses (potential for missed calls), stress or
wear and tear on the system through unwanted use, and the nuisance of interruptions.
*Progressive Health & Rehab Corp. v. Strategy Anesthesia,* LLC, 271 F.Supp. 3d 941 (S.D. Ohio
2017); *Swetlic Chiropractic & Rehab. Ctr.. Inc. v. Foot Levelers, Inc.,* 235 F.Supp. 3d 882, 888
(S.D. Ohio 2017).

---

[2]

Long before the TCPA was enacted, the common law has recognized that nuisance and
invasion of privacy are harms that are subject to legal redress.

The harms alleged in this case are substantively indistinguishable from the harms other courts have found to satisfy the injury requirements of Article III standing. Defendant does not dispute, at this stage of the litigation, that Plaintiff and other consumers received messages on their voicemail systems which they did not authorize, from an entity with which they had no relationship. Defendant does not dispute that the Plaintiff and other consumers had to take time from their day to review the message before knowing that it was an unsolicited and unwanted message. There is also no credible evidence to refute the allegation that Plaintiff and other consumers are often audibly alerted to the receipt of these messages. Contrary to Defendant's argument that audible notifications are a consumer choice that cannot be considered an unwanted interruption, consumers are not required to silence their voicemail notifications and limit their access to desired messages in order to silence or reduce the interruption caused by Defendant's alleged distribution of unwanted and unsolicited messages. Under the right circumstances, this type of intrusion has been found to create a nuisance sufficient to satisfy the requirement for TCPA standing.

In this case, the Court need not determine whether the allegation of nuisance and invasion of privacy are sufficient in and of themselves to satisfy standing because Plaintiff has also alleged that she pays for voicemail service and that the Defendant's messages take up space in consumers' voicemail boxes. These allegations, if true, represent the same type of harm as the lost call opportunity created by faxes which temporarily tie up the phone line, or phone calls and text message that use a portion of an allotment paid for by the consumer. Plaintiff also alleges depletion of her cell phone battery, which, when combined with the other allegations, sufficiently alleges economic injury, even if the economic loss may be small.

Taking into account the allegations in the Second Amended Complaint and the items appearing in the record of this case, it appears clear that Ms. Silbaugh alleges actual harm in the form of nuisance/invasion of privacy, monetary cost, and waste of time and resources. These allegations go beyond mere conclusory assertions as the Second Amended Complaint outlines the means by which the alleged harms have occurred. Based on the specific allegations and facts of this case, and taking into account the clarification provided by the *Spokeo* Court, this Court finds that Ms. Silbaugh has alleged an injury sufficient to satisfy the requirements for standing under Article III of the United States Constitution.

To the extent that Defendant claims Ms. Silbaugh's allegations of injury are factually inaccurate, they have failed to provide sufficient credible evidence to override the allegations at this stage of the litigation. CenStar cites the Declaration of Hector Lama, the Director of Telesales at Spark Energy and person responsible for marketing at CenStar in support of its factual challenges to Ms. Silbaugh's allegations of injury. Mr. Lama describes the technology used to generate the messages received by Ms. Silbaugh as "ringless voicemail technology." He claims that ringless voicemail is inserted into a voicemail box without making the recipient's telephone ring, that it does not appear on the recipient's telephone bill, and that no charge is incurred by the recipient of a ringless voicemail. (ECF #20-2, ¶ 10-12). These statements do not counter Ms. Silbaugh's allegations that hers and other consumer's phones provide an audible notification when the voicemail is received, that the messages take up limited voicemail space that the consumers have paid for, or that they have an economic cost through the exhaustion of paid resources (battery power, voicemail space, etc.). Further, nothing in Mr. Lama's statement indicates that he is qualified to make a declaration about content of each consumer's telephone

bill, or the charges imposed by other companies on the recipients of these messages. Finally, they do not address Ms. Silbaugh's allegations that the messages created a nuisance, and constituted an invasion of her privacy.

## CONCLUSION

For the reasons set forth above Defendant's Motion to Dismiss the Second Amended Complaint, (ECF #20), is DENIED. Consequently, Defendant's Motion for Protective Order and a Stay of Discovery pending resolution of the motion to dismiss is DENIED as MOOT. (ECF #21).

IT IS SO ORDERED.


DONALD C. NUGENT
United States District Judge

DATED: September 20, 2018

-8-